IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ALLEN RAY WEBB, ET. AL     PLAINTIFFS

VS.     No. 4:04CV214-D-B

CITY OF LELAND, MISSISSIPPI, ET. AL     DEFENDANTS

## OPINION GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Presently pending before the Court is the Defendant City of Leland's motion for summary judgment. Upon due consideration, the Court finds that the motion shall be granted in part and denied in part.

*A. Factual Background*

The Plaintiff initiated this Section 1983 action on July 7, 2004, in the Circuit Court of Washington County, Mississippi. The Plaintiff filed this action claiming violations of his constitutional rights arising out of an altercation with three police officers from the City of Leland on April 23, 2003. The Plaintiff sued the City of Leland and all three police officers in their official capacities, in essence a suit against the City of Leland. It is significant that neither of the three police officers were sued individually for violating a constitutionally protected right under section 1983. On July 27, 2004, the Defendants removed the action to this Court citing Federal Question jurisdiction. On December 6, 2004, this Court issued an order denying Plaintiff's motion to remand because Plaintiff's claims arise under the Constitution of the United States.

Before setting out the substantive factual background in this case, the Court notes that the parties' versions of the facts differ greatly. The reasonable person would question whether the parties are talking about the same case. Thus, the Court is left with no alternative but to recount the

facts in light most favorable to the non-moving party, the Plaintiff. However, the Court will note the Defendants' version of the facts when it is necessary to do so.

Allen Ray Webb, the Plaintiff, has both speech and hearing incapacities as a result of a childhood bout with spinal meningitis. City of Leland Police Lieutenant Leon Hicks became familiar with the Plaintiff over several years of working the night shift since he became a police officer in 1994. The Plaintiff asserts that over the years Defendant Hicks would see the Plaintiff walking the street late at night. The Plaintiff claims that Hicks would feed the Plaintiff and allow him to sleep in the back of his patrol car. During this time, the Plaintiff never feared Hicks or suspected he would ever arrest him. In addition, the Plaintiff always did what Hicks requested of him.

Around April 20 or 21, 2003, while off duty, Hicks observed Plaintiff sitting on the porch of a house on Hudson Street, smoking a pipe. The Defendants state that this street is well-known for its high drug traffic. The Defendants claim that Hicks saw the Plaintiff smoking a crack pipe. However, the Plaintiff asserts that in his deposition Hicks could only describe it as a pipe. The Plaintiff states that Hicks could not identify specifically if it was a crack pipe and what was being smoked by the Plaintiff. The Plaintiff argues that Hicks stated that he had never smelled drugs on the Plaintiff during the 40-50 times that the Plaintiff had been in his car. In fact, the Plaintiff asserts that Hicks had never seen the Plaintiff even smoke a cigarette.

Shortly after midnight on April 23, 2003, Defendant Hicks observed the Plaintiff at the same house while patrolling Hudson Street. Hicks noticed a small grey vehicle turning from Hudson Street onto 10th Street. The vehicle was operated by Diane Archie. Archie saw Lt. Hicks and stopped the car immediately because she knew Hicks was aware of her suspended drivers' license. Archie drove the car three houses down and stopped in front of the home of her cousin. Archie claims she got out of the car and the Plaintiff began to walk towards her. Archie stated that she

checked Plaintiff's pockets to make sure he did not have any drugs on him. At that point, they returned to her car. Lt. Hicks observed the Plaintiff get into the grey vehicle.

Archie started the car and proceeded toward her mother's house. Archie claims that at the end of the block she stopped at the stop sign and executed a right turn. Lt. Hicks stated he observed the vehicle run the stop sign at Feltus and 11th Street. At that point, Lt. Hicks turned on his blue lights. Archie claims that she proceeded the short distance to her mother's house and then parked in the driveway at the rear of the residence. Lt. Hicks countered that the vehicle ran another stop sign, ran a red light, and then went into the backyard of the residence at 1009 Ruby Washington Street. Archie claims she exited the vehicle and went to talk to Hicks. However, Archie states that Lt. Hicks proceeded directly towards the passenger side of the car where the Plaintiff was still seated. Lt. Hicks claims he observed Archie throw something under the car and then the Plaintiff exited the vehicle immediately and rushed toward him.

The Plaintiff alleges that Lt. Hicks opened the passenger door and attempted to forcefully remove him from the car. The Plaintiff resisted the attempt to physically remove him. The Plaintiff alleges that Archie witnessed Hicks strike the Plaintiff on the shoulder 3-4 times with a long dark-colored object–either a flashlight or a night stick. The Plaintiff alleges that Hicks attempted to spray the Plaintiff with mace, but first missed and sprayed himself. Hicks then pulled the Plaintiff from the car and continued to strike him. At this point, Officer Lester Jones arrived and the Plaintiff alleges that Jones immediately began to swing at the plaintiff with either a flashlight or a night stick. Jones slipped in the wet grass and then both officers struck Plaintiff in his stomach.

Once on the ground, the Plaintiff alleges that Hicks climbed on Plaintiff's back and applied a choke-hold while Jones continued to beat Plaintiff. Officer Flasco Bryant then arrived on the scene. The Plaintiff alleges that Officer Bryan began striking the back of his legs. Officer Bryant

then pinned Plaintiff's legs and the officers handcuffed the Plaintiff. Kimberly Willis, who lives across the street from Diane Archie's mother, alleges that she saw the beating take place and that Plaintiff did not leave the car first.

The Defendants tell a radically different story. The Defendants assert that the Plaintiff rushed Lt. Hicks. Lt. Hicks claims that he told the Plaintiff to stop and then tried to pepper spray him. Lt. Hicks alleges that the Plaintiff grabbed him, but he got away. Lt. Hicks stated that he peppered sprayed the Plaintiff, but that failed to subdue him. Lt. Hicks alleges that a protracted wrestling match ensued. The Defendants claim that Officer Jones came to assist Lt. Hicks. The Defendants allege that the Plaintiff threw Officer Jones backwards and caused him to fall. Officer Jones finally got up again and the Plaintiff allegedly hit him in the chest and the head, knocking him unconscious. At this point, Officer Flasco Bryant arrived. The Defendants assert that Officer Bryant sat on the Plaintiff's legs so that Lt. Hicks could handcuff him.

The Plaintiff alleges that he was brought to the Leland Police Department at 2:42 A.M. on April 23, 2003. He was booked into the Jail. The Plaintiff alleges that Lt. Hicks was the senior officer on duty and in charge of the jail. The Plaintiff alleges that the Leland Police did not attempt to notify any of the Plaintiff's family. The Plaintiff futher alleges that he was held incommunicado and without medical attention for over sixteen hours. Immediately upon his release, the Plaintiff went by ambulance to Delta Regional Medical Center. There the hospital noted he had a swollen right eye and that the eye was draining. The Plaintiff was kept at the hospital for fours hours and released. The Plaintiff was under the care of a physician for several months following the incident.

The Defendants state that Lt. Hicks spotted a crack pipe under Archie's car. In addition, Lt. Hicks claims that he patted down the Plaintiff and found a crack pipe on him. The Defendants allege that Lt. Hicks offered the Plaintiff medical attention from the ambulance and he refused. The

Defendants state that at the police station they noticed redness in the Plaintiff's eyes and ran water over them.

The Plaintiff was charged with possession of drug paraphernalia, resisting arrest, possession of cocaine, and assault and battery on a police officer. Three grand juries passed without indicting the Plaintiff on any of these charges. After a hearing, the Washington County Circuit Court dismissed the charges against the Plaintiff.

The Plaintiff filed this action seeking damages from the City of Leland for its police officers actions on April 23, 2003. The Plaintiff claims that his Fourth, Sixth, and Fourteenth Amendment rights were violated. In addition, the Plaintiff claims that the City of Leland police officers violated the Civil Rights Act and the Mississippi Tort Claims Act. Specifically, the Plaintiff alleges that the Defendants unlawfully incarcerated him and used excessive force during his arrest. In addition, the Plaintiff claims that his was denied proper medical care. The Plaintiff states that the officers acted in a willful and wanton way and acted with deliberate indifference to his medical condition.

The Defendants now move this Court to grant them summary judgment on all claims by the Plaintiff. The Defendants assert that suits against officers in their official capacities are the same as a suit against the City of Leland. The Defendants state that the Plaintiff cannot state a constitutional deprivation of excessive force or denial of medical treatment. The Defendants argue that they are entitled to use reasonable force to protect themselves when they suspect criminal activity is afoot. In addition, the Defendants state that all the federal claims should be dismissed because the Plaintiff has failed to identify a policy, practice or procedure that would make the City of Leland liable for its officers actions. The Defendants claim they are entitled to judgment as a matter of law. Finally, the Defendants state that this Court should dismiss all state law claims because the City of Leland is exempt under the Mississippi Tort Claims Act. The Defendants state that the Plaintiff was

involved in criminal activity, that the officers did not act with reckless disregard, and that the officers were performing a discretionary function. The Court notes that the Defendant City of Leland in its motion did not raise any issue as to the technical provisions of Miss. Code. Ann. §§ 11-1-46 et seq., the Mississippi Tort Claims Act.

## B. *Standard of Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56 (C) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Discussion*

1. Section 1983

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. To state a claim under Section 1983 the Plaintiff must (1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. Cornish v. Correctional Services Corp., 402 F.3d 545, 549 (5th Cir. 2005). The Plaintiff has alleged that the Defendants used excessive force in detaining him and failed to provide adequate treatment during his incarceration. The Court will take each claim in turn.

A. Excessive Force

To bring a Section 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that he was seized. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (*citing* Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 1868, 104 L. Ed. 2d 443 (1989)). Then, the Plaintiff must show that he (1) suffered an injury that (2) resulted directly from the use of force that was excessive to the need and (3) that the force used was objectively unreasonable. Id. Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000). An officer seizes a person under the Fourth Amendment when he, "by means of physical force or show of authority has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19, 88 S. Ct. 1868, 1886, 20 L. Ed. 2d 889 (1968). There is no dispute in this case that the Plaintiff was seized by the Defendant police officers. Therefore, the Fourth Amendment is implicated and the Court will now address the excessive force claim.

A Plaintiff alleging an excessive force claim must show he has suffered some kind of injury. Jackson v. R. E. Culbertson, 984 F. 2d 699, 700 (5th Cir. 1993). While certain injuries are so slight that they cannot satisfy the injury prong, psychological injuries may sustain a Fourth Amendment claim. See Dunn v. Denk, 79 F.3d 401, 402 (5th Cir. 1996) (en banc). Here, the Plaintiff has alleged severe physical injuries and psychological injuries. The medical records show that the Plaintiff suffered a hematoma to his eye and several bruises and contusions. Therefore, the Court finds that the Plaintiff suffered an injury.

In addition, the Court finds that Plaintiff's injuries resulted directly and only from the excessive force. It is undisputed that once the Plaintiff left the Defendants' custody he went to the hospital to receive treatment for his injuries. The Plaintiff was incarcerated for a period of hours at the City of Leland's jail. The Court deduces that Plaintiff's injuries must have occurred from the incidents surrounding his arrest. Taken in light the Plaintiff's allegations and the affidavits of two potential eyewitnesses, the Court finds that Plaintiff's injuries did result directly from the excessive force administered by the Defendants.

To determine whether a seizure was objectively reasonable and whether the injury was cognizable, the Court asks "whether the totality of the circumstances justified [that] particular sort of search or seizure." Flores, 381 F.3d at 398 (*quoting* Tennessee v. Garner, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699, 85 L. Ed. 2d 1 (1985)). The reasonableness of a specific law enforcement action is judged by balancing the intrusions of the individual's Fourth Amendment rights versus the promotion of legitimate governmental interests. Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). "To gauge the objective reasonableness of the force used by the law enforcement officer, we must balance the amount of force used against the need for force. Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996) (*citing* Spann v. Rainey, 997 F.2d 1110, 1115 (5th Cir.

1993). The Supreme Court's balancing test requires the Court to look at the facts and circumstances of each case. Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

In the case *sub judice*, the Court takes into consideration the Plaintiff's injuries, the Plaintiff's statements, the alleged eyewitness accounts, the Plaintiff's medical records, and the Defendants' deposition testimony. In light of the foregoing, the Court finds there are genuine issues of material fact and that a jury could conclude that the Defendants used objectively unreasonable force when dealing with the Plaintiff. Therefore, the Court finds that the Plaintiff has alleged a constitutional violation by a state actor.

B. Denial of Medical Attention

A pretrial detainee's constitutional right to medical care flows from the procedural and substantive due process guarantees of the Fourteenth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (comparing such right to a prisoner's Eighth Amendment right to be free from cruel and unusual punishment). Defendants are liable for failure to provide medical care if the Plaintiff can show that the state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted. Hare, 74 F.3d at 647-48. "Deliberate indifference" requires that the state actor have subjective knowledge of the risk of harm. Id. at 650. Mere negligence will not suffice, and "deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a ... failure to act reasonably. Id. at 649 (citations omitted).

Thus, for Webb to prevail on this claim, he would have to show that the Defendants' actions in failing to provide him with medical attention were objectively unreasonable, but also that the Defendants intended the consequences of those actions. The Plaintiff has produced proof that the officers intended to harm him while they were allegedly beating him. In addition, it is evident that the Plaintiff did not get medical treatment while in police custody. Because a major factual dispute

exists, the Court finds that there are genuine issues of material fact. At this point, the Plaintiff has produced enough evidence that the officers were deliberately indifferent to his medical injuries. Thus, the Plaintiff's lack of medical care claim advances to the next stage of the Court's analysis.

2. Municipal Liability

Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Monell v. Dep't of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). The text of section 1983 precludes municipal liability predicated on respondeat superior. Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). Thus, the unconstitutional conduct must be directly attributable to the municipality by some sort of official action. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001), *cert. denied,* 534 U.S. 820, 122 S. Ct. 53, 151 L. Ed. 2d 23 (2001). Isolated incidents of unconstitutional actions by municipal employees will almost never trigger municipal liability. Id. Bennett v. City of Slidell, 728 F. 2d 762, 768 n. 3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985).

Here, the Plaintiff cannot maintain a theory of municipal liability. The Plaintiff has not identified a policy-maker, which is a criterion for 1983 liability. See Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S. Ct. 2702, 2724, 105 L. Ed. 2d 598 (1989). In addition, the Plaintiff has failed to identify an official policy, practice or procedure. See Webster v. City of Houston, 735 F. 2d 838 (5th Cir. 1984) (en banc). The Plaintiff unfortunately has failed to identify any element of a Monell claim. Thus, the Court is left with no alternative but to grant summary judgment on all the federal claims. Therefore, no genuine issue of material fact exists on Plaintiff's federal claims and the Defendants are entitled to judgment as a matter of law.

3.  Liability Under the Mississippi Tort Claims Act

The Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 et seq., provides the exclusive remedy against a governmental entity for acts or omissions which give rise to suit. Watts v. Tang, 828 So.2d 785, 791 (Miss. 2002). The Act further provides that "a governmental entity and its employees acting within the course and scope of their employment duties shall not be liable for any claim . . ."

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities related to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any persons not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(C). The police exemption of the MTCA is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties with respect to the victim. Miss. Dept. of Public Safety v. Durn, 861 So.2d 990, 997 (Miss. 2003). Government entities may be held liable only if the complained of conduct amounts to recklessness. Craddock v. Hicks, 314 F. Supp. 2d 648, 654 (N.D. Miss. 2003); Maldanado v Kelly, 768 So.2d 906, 909 (Miss. 2000). While the statute does not provide a definition, the Mississippi Supreme Court describes recklessness as where an "actor has intentionally done an act of unreasonable character in reckless disregard to the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Maldanado, 768 So. 2d at 910.

The court finds that genuine issues of material fact exist as to whether the Defendants' conduct rises to the level of recklessness. As such, the Defendants have failed to show that they are entitled to judgment as a matter of law. Further, the court has the discretion, which it exercises here, to allow the Plaintiff's claims to proceed to trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

In addition, the MTCA provides that a governmental entity is immune from a tort suit "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(d) (Rev.2002). "Governmental entity" includes counties within the State. Miss. Code Ann. § 11-46-1(g) and (I) (Supp.2004). The Mississippi Supreme Court has used a two-part test to determine if a function is discretionary: "(1) whether the activity involved an element of choice or judgment, and if so; (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives." Bridges v. Pearl River Water Supply Dist., 793 So. 2d 584, 588 (Miss. 2001) (citing Jones v. Miss. Dept. of Transportation, 744 So. 2d 256, 260 (Miss. 1999)).

The Mississippi Supreme Court most recently ruled on the discretionary function exemption in City of Jackson v. Powell, 917 So. 2d 59, 73-75 (Miss. 2005). In that case, the Mississippi Supreme Court announced a high burden for a Plaintiff to overcome the discretionary function exemption when dealing with actions of a municipality's police officers. However, because the facts in this case are in such a state of dispute, the Court cannot rule in favor of the City of Leland. Thus, the Court finds that genuine issues of material fact exist, and that the Defendants have failed to show that they are entitled to judgment as a matter of law. Further, the court has the discretion, which it exercises here, to allow the Plaintiff's claims to proceed to trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) ("Neither do we suggest ... that the trial court may not deny summary judgment in a case where there is reason to believe that

the better course would be to proceed to a full trial.").

*D. Conclusion*

Upon a thorough review of the facts and the parties' pleadings and briefs, the Court finds that the Plaintiff could meet the burden of both an excessive force claim and failure to provide medical treatment claim under section 1983. However, the Court finds that the Plaintiff failed to identify a policy, practice, or procedure by the City of Leland that would make it liable under section 1983. Thus, the Court finds that all of the Plaintiff's federal claims fail and the Defendants are entitled to judgment as a matter of law on those federal claims. In addition, the Court finds that the Plaintiff submitted sufficient proof that genuine issues of material fact exist on Plaintiff's state law claim. Thus, as to the state law claim, the motion for summary judgment is not well-taken and is overruled.

A separate order in accordance with this opinion shall issue this day.

This the 1st day of May 2006.

/s/ Glen H. Davidson
Chief Judge